**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**FELLOWES, INC.**

      **Plaintiff,**

      **v.**                                **Civil Action No. 2:06cv289**

**MICHILIN PROSPERITY COMPANY,**
**LTD.**

      **Defendant.**

<u>**ORDER**</u>

In this case, Plaintiff Fellowes, Inc. ("Plaintiff" or "Fellowes") brought a two-count suit

against Defendant Michilin Prosperity Company, Ltd. ("Defendant" or "Michilin") alleging

patent infringement.  Presently before the Court is Plaintiff's motion to dismiss Defendant's

counterclaims for defamation, tortious interference, and violation of the Lanham Act for failure

to state a claim upon which relief can be granted, and, in the alternative, for a more definite

statement.  For the reasons stated herein, the Court **FINDS** that neither Michilin's counterclaim

nor its proposed "more definite" counterclaim satisfy the basic requirements of notice pleading.

Accordingly, the Court **GRANTS** Fellowes' motion to dismiss Michilin's counterclaim for

failure to state a claim.


**I.**      **Facts and Procedural Background[1]**

---

[1]In ruling on a motion to dismiss, the court must accept the non-moving party's
allegations as true.  <u>See</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984).  Because Defendant
is the non-moving party, the facts contained in its Answer are taken as true.  However, because
the Answer does not recite the facts upon which Plaintiff's Complaint is based, the Court bases
the following summary upon some facts alleged in Plaintiff's Complaint, without accepting them

## A.      Factual Background

Michilin is a Taiwan corporation engaged in the business of soliciting sales of and selling paper shredders ("shredders") to national retailers in the United States.[2]  Fellowes, an Illinois corporation, alleges in a two-count complaint that Michilin infringed two of Fellowes' patents by "making, using, importing, offering for sale, and/or selling in the United States, including in the Eastern District of Virginia," shredders covered by one or more of the claims in Fellowes' patents.

The first of Fellowes' patents at issue is entitled "Shredder With Lock For On/Off Switch" and was issued on May 9, 2006, as United States Patent No. 7,040,559 (the "'559 patent").  The '559 patent discloses "a shredder with a switch lock that locks the on/off switch in its on/off position." Compl. Ex. A.  The second patent is entitled "Paper Shredder Shaft" and was issued on July 17, 2001, as United States Patent No. 6,260,780 (the " '780 Patent").  The '780 Patent discloses, in part, a "shredder cylinder that includes a generally circular shaft having a plurality of spaced apart cutting disks arranged along the axis of the cylinder, and a spacer disposed between adjacent disks . . . ." Compl. Ex. B.

Fellowes' infringement claims focus on five models of shredder allegedly manufactured by Michilin and offered for sale by Office Depot and Staples, Inc., at retail stores in the United States, including in the Eastern District of Virginia.  Michilin denies manufacturing these

as true, and notes which allegations Defendant denies.

[2]Michilin denies Fellowes' allegations that it exported and continues to export shredders into the United States, though Michilin admits to soliciting sales of and selling shredders to national retailers in the United States.  Answer 3 ¶¶ 15-16.

particular models of shredder and denies their being sold at Office Depot or Staples. [3]

### B.   Procedural Background

Fellowes asks the Court to determine that Michilin has directly infringed, contributorily infringed, and/or actively induced infringement of both the '559 Patent and the '780 Patent under 35 U.S.C. § 271, and seeks preliminary and permanent injunctive relief under 38 U.S.C. § 283. In addition, Fellowes seeks compensatory damages, prejudgment interest and costs, attorneys' fees, as well as awards increasing damages up to three times the amount found or assessed for any infringement.   See 35 U.S.C. § 284.  Fellowes has demanded a jury trial on all issues.

Michilin denies infringing Fellowes' patents, and raises four affirmative defenses alleging that Fellowes' patents were invalid and unenforceable, and a fifth affirmative defense asking the Court to find that "Fellowes has abused process in bringing this lawsuit."  In addition, Michilin brings a five-count counterclaim seeking (1) a declaratory judgment that Fellowes' '559 Patent is invalid and unenforceable; (2) a declaratory judgment that Michilin has not infringed the '559 Patent; (3) a declaratory judgment that Fellowes' '780 Patent is invalid and unenforceable, and (4) a declaratory judgment that Michilin did not infringe the '780 Patent.

Count 5 of Michilin's counterclaim, which is the subject of this motion to dismiss,

---

[3]Fellowes alleges, and Michilin denies, that Michilin manufactures the following three shredders for sale in the Eastern District of Virginia by Office Depot under the name Ativa: "Paper Shredder 6 Sheet Diamond-Cut" with model number DQ61Ba and item number 590-322; "Paper Shredder 6 Sheet Diamond-Cut" with the model number DQ60M and item number 811-584; "Paper Shredder 8 Sheet Diamond-Cut" with model number DQ80M and item number 811-592.  Michilin also denies Fellowes' allegations that Michilin manufactures the following two shredders that are allegedly offered for sale in the Eastern District of Virginia by Staples, Inc. ("Staples") under the Staples brand name and under the name Infoguard: Infoguard shredder labeled "7 Sheet Cross Cut Shredder" with model number SQ70B and item number 613491, and "Staples Medium Duty Shredder Cross Cut" with model number SPL-1201X and item number 618158.  Answer 3-4 ¶¶ 17-37.

consists of two sentences.  First, Michilin alleges that "Fellowes has tortiously interfered with sales of shredders associated with Michilin, to Michilin's customers."  Answer 15 ¶ 59.  Second, Michilin alleges that "Fellowes has made defamatory statements to Michilin's customers about shredders associated with Michilin and in doing so has violated 15 U.S.C. 1125(a) and caused Michilin irreparable harm."  Id. 15 ¶ 60.  In its prayer for relief, Michilin asks that the Court enjoin Fellowes from "contacting Michilin's customers . . . [,] interfering with sales by Michilin to its customers . . . [,] and defaming shredders associated with Michilin." Id. 16 ¶¶(e),(f),(g).

## II.    Motion to Dismiss and in the Alternative for a More Definite Statement

Fellowes moves to dismiss Count 5 of Michilin's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) and, in the alternative, moves for an order requiring Michilin to provide a more definite statement under Rule 12(e).  Fellowes argues that Michilin has failed to satisfy the basic requirements of notice pleading because it has set forth no facts to support the elements of its claims for tortious interference and defamation.  Fellowes argues that Michilin's counterclaim fails to specify whether it is for tortious interference, a Lanham Act violation, and/or defamation, and as a result forces the Court and the plaintiff to speculate as to its causes of action.  Michilin responds that Count 5 states a claim on each of these grounds when read in conjunction with the section of its counterclaim requesting injunctive relief.  Michilin proposes, in the alternative, a "more definite" Count 5 in order to "provide opportunity to explain" its counterclaims.  Def.'s Resp. and Opp'n to Pl.'s Mot. 3.  Michilin states that it is "willing to substitute a modified Counterclaim 5 and associated prayers for relief as attached if the court so orders." Id.  Fellowes urges the Court to deny Michilin any leave to amend its Counterclaim on

4

grounds that Michilin has not requested such leave, and that an amendment would be futile

because it would not survive a motion to dismiss.

### A.      Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits federal courts to dismiss an

action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A

Rule 12(b)(6) motion to dismiss "should not be granted unless it appears certain that the [non-

moving party] can prove no set of facts which would support its claim and would entitle it to

relief." Mylan Labs., Inc., v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).  The non-moving party

must satisfy Rule 8(a)'s "simplified notice pleading standard," which merely requires a

statement that "'gives the [non-pleading party] fair notice of what the [pleading party's] claim is

and the grounds upon which it rests.'"[4] Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)

(quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In considering a 12(b)(6) motion, the

"court should accept as true all well-pleaded allegations and should view the [pleading] in a light

most favorable to the [non-moving party]." Mylan Labs, 7 F.3d at 1134.   As the United States

Court of Appeals for the Fourth Circuit has recognized, although the basic pleading requirements

are not onerous, a party asserting a claim must "allege facts sufficient to state all the elements of

[its] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003); see

---

[4]Rule 8(a), Claims for Relief, provides:

A pleading which sets forth a claim for relief, whether an original claim, counterclaim,
cross-claim, or third-party claim, shall contain (1) a short and plain statement of the
grounds upon which the court's jurisdiction depends, unless the court already has
jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short
and plain statement of the claim showing that the pleader is entitled to relief, and (3) a
demand for judgment for the relief the pleader seeks.  Relief in the alternative or of
several different types may be demanded.

<u>Dickson v. Microsoft Corp.</u>, 309 F.3d 193, 213 (4th Cir. 2002) ("'[T]he pleader may not evade [Rule 12(b)(6)] requirements by merely alleging a bare legal conclusion . . . ."). A party's claim "need not 'make a case' against [the other party] or 'forecast evidence sufficient to prove an element' of the claim," but it must "'allege facts sufficient to state elements' of the claim." <u>Chao v. Riverdell Woods, Inc.</u>, 415 F.3d 342, 349 (4th Cir. 2005) (citations omitted). "Thus, the sufficiency of the [claim] does not depend on whether it provides enough information to enable the [other party] 'to prepare a defense,' but merely 'whether the document's allegations are detailed and informative enough to enable the [other party] to respond.'" <u>Id.</u> (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure: Civil 3d* § 1215, at 193 (3d ed. 2004)).

Fellowes also invokes Rule 12(e) of the Federal Rules of Civil Procedure,[5] which allows a party to move for a more definite statement if the other party's pleading "is so vague or ambiguous that [he] cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). Whether a motion for a more definite statement should be granted is a "matter generally left to the district court's discretion." <u>Hodgson v. Va. Baptist Hospital, Inc.</u>, 482 F.2d 821, 824 (4th Cir. 1973). <u>See</u> <u>Gleichauf v. Ginsberg</u>, 859 F. Supp. 229, 233 (S.D.W. Va. 1994) ("The standard for determining whether to grant a 12(e) motion 'is whether it is reasonable to

---

[5]Rule 12(e), Motion for a More Definite Statement, provides:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

6

require [the moving party] to respond to the . . . [pleading]'"). A Rule 12(e) motion is "'ordinarily restricted to situations where a pleading suffers from unintelligibility rather than want of detail, and if requirements of the general rule as to pleadings are satisfied and the opposing party is fairly notified of the nature of the claim such motion is inappropriate.'" Tilley v. Allstate Ins. Co., 40 F. Supp. 2d 809, 814 (S.D.W. Va. 1999) (quoting Robinette v. Griffith, 483 F. Supp. 28, 36 (W.D. Va. 1979)). A pleading that can survive a Rule 12(e) motion necessarily can withstand a motion to dismiss under Rule 12(b)(6). Chao, 415 F.3d at 349 n.3.

### 1.    Tortious Interference

The elements of a prima facie showing for a claim of tortious of interference with a contract in Virginia are: (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." Chaves v. Johnson, 335 S.E.2d 97, 102 (Va. 1985); T.G. Slater & Son, Inc. v. Donald P. and Patricia A. Brennan LLC, 385 F.3d 836, 844 (4th Cir. 2004); 17th St. Assocs., LLP v. Markel Intern. Ins. Co., 373 F. Supp. 2d 584 (E.D. Va. 2005).

Michilin asserts in its counterclaim that "Fellowes has tortiously interfered with sales of shredders associated with Michilin, to Michilin's customers." Def.'s Countercl. 15 ¶ 59. Its references to unnamed "customers" and "sales" notwithstanding, Michilin provides no facts whatsoever that support an inference that Fellowes knew about or intentionally interfered with Michilin's relationship with its customers. Most glaringly, Count 5 fails to show a "breach or termination" of any relationship or expectancy on the part of Michilin, nor any resultant damage

to Michilin.

Rather than set forth facts supporting the elements of tortious interference, Michilin asks the Court to cobble together various ambiguous statements from different pages in its pleading in search of a cause of action.  In its Response and Opposition to Plaintiff's Motion ("Response"), Michilin argues that the factual support for claims can be found not in Count 5 itself but in the "Prayer for Judgment and Relief" section of its counterclaim. Def.'s Resp. and Opp'n to Pl.'s Mot. 1 ("[T]he facts that form the basis for Count 5 are clear from prayers for relief (e), (f) and (g) associated therewith . . . .").  By urging the Court to look beyond Count 5 to other parts of its Answer, Michilin effectively concedes that Count 5, on its own, is unacceptably vague. Moreover, paragraphs (e), (f), and (g) are hardly illuminating.  Paragraph (e) asks the Court to enjoin Fellowes "from contacting Michilin's customers," paragraph (f) asks to enjoin Fellowes from "interfering with sales by Michilin to its customers," and (g) asks to enjoin Fellowes from "defaming shredders associated with Michilin." See Def.'s Countercl. 16 ¶¶ (e),(f),(g).  These statements, taken together, provide little more than a restatement of Michilin's bare assertions in Count 5.

Michilin's "Superceding Counterclaim Count 5," included in its "Proposed More Definite Statement" in response to Fellowes' motion, is scarcely more specific.  Although difficult to parse, Michilin's revised counterclaim appears to allege that Fellowes interfered with Michilin's sales of shredders to its existing customers, including Wal-Mart, Office Max and Executive Machine, Inc. ("EMI"), by informing them of the patent infringement lawsuit now before the Court.  Def.'s Proposed Countercl. 5 ¶ 61-64 (asserting that Fellowes "has tortiously interfered with sales of shredders associated with Michilin to Michilin's customers").  Michilin

contends that Fellowes, knowing that the suit was frivolous, told Michilin's customers about it with the "sole purpose of frightening [them], to antagonize Michilin's relation with its customers, [and] to wrongfully cut into, reduce or eliminate Michilin's sales to its customers." See Def.'s Proposed Countercl. 5 ¶ 61; see also Def.'s Resp. and Opp'n to Pl.'s Mot. 1-2 (asserting that "Fellowes has contacted Michilin's customers to interfere with Michilin's sales to its customers by defaming shredders sold to these customers that are associated with Michilin (by bringing this action to the attention of said customers)."). Michilin also claims that "each of these customers have brought their concerns to Michilin's attention." Def.'s Proposed Countercl.1-2 ¶ 61.[6]

Even if it could be said that Michilin's Superceding Counterclaim Count 5 has pled the first two elements of tortious interference, i.e. "the existence of a valid contractual relationship or business expectancy" and "knowledge of the relationship or expectancy on the part of the

---

[6]In its Superceding Counterclaim Count 5, Michilin replaces the existing prayers for relief in paragraphs (e), (f) and (g) with three separate prayers for relief as follows:

(h)     Fellowes is enjoined from contacting Michilin's customers;

(i)     Fellowes is enjoined from interfering with sales by Michilin to its customers by informing said customers of this suit and as part of the injunctive relief where customers of Michilin are already so contacted, Fellowes is ordered to write those customers of Michilin it has informed about the suit, that Fellowes' infringement position is baseless and that this suit was brought in bad faith to allow it to unjustifiably threaten Michilin's customers by sending letters to these customers calculated to cause these customers to stop selling shredders associated with Michilin;

(j)     Fellowes is enjoined from defaming shredders associated with Michilin by indicating to customers that these shredders are involved in a lawsuit against Michilin for infringement, without indicating that its claims for infringement associated with U.S. Patent Nos. 7,040,559 and 6,260,780 are baseless.

interferor," Michilin has not pled sufficient facts to show "intentional interference inducing or causing a breach or termination of the relationship or expectancy." See Chaves, 335 S.E.2d at 102. Michilin asserts in paragraph 63 that Fellowes' patent infringement suit is "blatantly and egregiously defective" and that "this indicates that [the] suit was brought in bad faith for the purpose of wrongfully threatening Michilin's customers by bringing the suit to the attention of said customers." See Def.'s Proposed Countercl. 2 ¶ 63. The bottom line, however, is that Michilin offers no facts showing, even inferentially, that Fellowes knew that the instant infringement case was frivolous or that Fellowes intended to interfere with Michilin's sales of shredders to its retail customers. Moreover, Michilin has made no allegations that such interference "induc[ed] or caus[ed] a breach or termination of the relationship or expectancy." See Chaves, 335 S.E.2d at 102. The only apparent consequence of the alleged interference is that "each of these customers have brought their concerns to Michilin's attention." Def.'s Proposed Countercl. 2 ¶ 61. Michilin has thus failed to plead the third element of tortious interference. For similar reasons, Michilin has not pled the fourth element, "resultant damage." Cf. Whitaker v. Sheild, 2006 WL 1321481, at *10 (E.D. Va. 2006) (Jackson, J.) (granting 12(b)(6) motion to dismiss because plaintiffs "fail[ed] to allege the termination of any contracts with its patients [and also] failed to allege element four, that the termination resulted in damages.").

In sum, Michilin asks the Court to engage in speculation and guesswork as to the facts underlying its counterclaim. Michilin's revised counterclaim is insufficiently "detailed and informative enough to enable the [other party] to respond.'" Chao, 415 F.3d at 349. Accordingly, the Court **FINDS** that Michilin's counterclaim for tortious interference, even as

10

amended in its supposedly "more definite" counterclaim, fails to state a claim upon which relief can be granted and therefore **GRANTS** Fellowes' motion to dismiss this particular claim. Consequently, there is no need to reach Fellowes' motion for a more definite statement.

### 2.    Defamation

In Virginia the elements of common law defamation are "(1) publication about the plaintiff, (2) an actionable statement, and (3) the requisite intent." Chapin v. Greve, 787 F. Supp. 557, 561 (E.D. Va. 1992); Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). "A declaration which sets out the [pleading party's] cause of action with sufficient fullness and clearness to apprise the [other party] of the grounds of the [pleading party's] claim, and to enable the [other party] to plead to the action, is sufficient." Sun Life Assur. Co. v. Bailey, 44 S.E. 692, 693 (Va. 1903). In Virginia, a pleading alleging defamation must set forth the exact words spoken *in haec verba*. Fed. Land Bank of Baltimore v. Birchfield, 3 S.E.2d 405, 410 (Va. 1939); accord Vizi v. Dulles Orthopaedic Group, P.C., 63 Va. 159, 2003 WL 22495604, at *4 (Va. Cir. Ct. 2003) (the pleading need not set forth, however, the identity of the individuals to whom the allegedly defamatory statements were made and under what circumstances).

Fellowes argues that Michilin fails to demonstrate that Fellowes made an "actionable statement." Pl.'s Reply 5. "To be actionable, material must be both false and defamatory." Greve, 787 F. Supp. at 562; see Knight-Ridder, 993 F.2d at 1092 (to be actionable, statement must "tend[ ] so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him"). "Merely offensive or unpleasant words are not defamatory." Id. at 1092. Thus, "'speech which does not contain a provably false factual connotation, or statements which cannot reasonably be interpreted as

11

stating actual facts about a person cannot form the basis of a common law defamation action.'"
Fuste v. Riverside Healthcare Ass'n, Inc., 575 S.E.2d 858, 861 (Va. 2003).

Michilin's original counterclaim alleges that Fellowes "has made defamatory statements
to Michilin's customers about shredders associated with Michilin and in doing so has violated 15
U.S.C. § 1125(a) and caused Michilin irreparable harm."  Def.'s Countercl. 15 ¶ 60.  This
counterclaim is deficient for several reasons.  First, it leaves the Court guessing as to whether it
is based on common law defamation, 15 U.S.C. § 1125(a) of the Lanham Act, or something else.
Second, assuming it is alleging common law defamation under Virginia law, the counterclaim
does not specify the exact words said, as indeed it must.  Birchfield, 3 S.E.2d at 410.  Nor does it
allege that Fellowes' alleged statements to its customers were false and thus "actionable."  See
Greve, 787 F. Supp. at 562.  Michilin's theory appears to be that it was defamatory to tell
someone of the existence of this lawsuit.  Because the statement must be false to be defamatory,
it follows that, by Michilin's logic, the lawsuit must not exist.  Surely Michilin is not trying to
tell the Court that the lawsuit against it is a fiction.  The increasing volume of discovery-related
motions and memoranda filed in this case more than four months before trial suggests quite the
opposite.  Defendant's shotgun approach towards pleading, in which it makes conclusory
assertions without providing facts to back them up, indicates to the Court that it is aiming for a
target that it knows it cannot achieve.  Michilin "may not evade [Rule 12(b)(6)] requirements by
merely alleging a bare legal conclusion." Dickson, 309 F.3d at 213.

Michilin's "Proposed More Definite Statement" of Count 5 does not cure these
shortcomings.  It merely asserts that Fellowes contacted "customers including Wal-Mart and
Office Max and on information and belief Executive Machine, Inc. (EMI, Inc;)" and informed

12

them of the infringement suit.  Def.'s Proposed Countercl. 1 ¶ 61.  The sole reference to

defamation in the revised counterclaim is the statement in paragraph 65 that the "facts alleged in

paragraphs 61, 62, and 63, including the communications with Michilin's customers by

Fellowes, constitute defamatory statements to Michilin's customers about shredders with

Michilin and constitute violation of 15 U.S.C. 1125(a) and indicate irreparable harm to Michilin

if relief is not granted."  See Def.'s Proposed Countercl. 5 ¶ 61.   Paragraphs (h), (i) and (j) of its

proposed "Superceding Prayers for Relief associated with Michilin's Counterclaim 5" ask for

various forms of injunctive relief and provide an additional fact: that Fellowes was allegedly

"sending letters" to Michilin's "customers calculated to cause these customers to stop selling

shredders associated with Michilin[.]"

Michilin's Superceding Counterclaim Count 5 still does not identify what was said, when

it was said, by whom or to whom.  Even assuming its assertions were true, Michilin has not

shown that the statements were false and thus "actionable," nor that they "tend[ed] so to harm"

Michilin's reputation or "to deter third persons from associating or dealing with" Michilin. See

Knight-Ridder, 993 F.2d at 1092.  Because its revised counterclaim is insufficient there is no

need to grant Fellowes' motion for a more definite statement under Rule 12(e).  Consequently,

the Court **FINDS** that Michilin's counterclaim for defamation fails to state a claim upon which

relief can be granted and Fellowes' motion to dismiss on this ground is **GRANTED.**

### 3.    Lanham Act

Michilin's counterclaim also invokes § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

"While much of the Lanham Act addresses the registration, use, and infringement of trademarks

and related marks, § 43(a) . . . is one of the few provisions that goes beyond trademark

13

protection." <u>Dastar Corp. v. Twentieth Century Fox Film Corp.</u>, 539 U.S. 23 (2003); <u>see</u> <u>Two Pesos, Inc. v. Taco Cabana, Inc.</u>, 505 U.S. 763, 767-70 (1992). Section 43(a) "'does not have boundless application as a remedy for unfair trade practices," however, and, "can apply only to certain unfair trade practices prohibited by its text." <u>Id.</u>

    15 U.S.C. § 1125(a)(1) provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which —

> (A)    is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

> (B)    in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

As before, Michilin asks the Court to engage in guesswork as to its cause of action. Its counterclaim asserts that Fellowes "has violated 15 U.S.C. 1125(a)" by virtue of having "made defamatory statements to Michilin's customers" about Michilin's shredders. After being offered an opportunity to clarify its claim, Michilin still does not expressly say in its Response whether it is asserting a false designation of origin claim under § 1125(a)(1)(A) or a false advertising claim

under § 1125(a)(1)(B), though it calls the former "clearly pertinent."[7]  It does not much matter

which provision Michilin intends to invoke, however, because, as the following discussion

demonstrates, no cause of action has been pled under any of them.

The "typical" claim under § 1125(a)(1)(A) is brought by a plaintiff "who is in

competition with the defendant, and charges the defendant with using a mark—a brand name, a

word, 'a slogan, a symbol, a combination of words and symbols, an ornamental feature, a

distinctive shape, or something else intended to remind the consumer of the brand'—so similar

to that of the plaintiff's that the public may be confused as to the source of the good or service."

Tao of Systems Integration, Inc. v. Analytical, 299 F. Supp.2d 565, 571 (E.D. Va. 2004) (quoting

Advanced Res. Int'l, Inc. v. Tri-Star Petroleum Co., 4 F.3d 327, 334 (4th Cir. 1993)).  Both a

cause of action for infringement and false designation of origin have five elements.  To prevail,

Michilin must prove: (1) that it possesses a mark; (2) that Fellowes used the mark; (3) that

Fellowes' use of the mark occurred "in commerce"; (4) that Fellowes used the mark "in

connection with the sale, offering for sale, distribution, or advertising" of goods or services; and

(5) that Fellowes used the mark in a manner likely to confuse consumers.  Lamparello v. Falwell,

420 F.3d 309, 313 (4th Cir. 2005) (citing 15 U.S.C. §§ 1114, 1125, and Lone Star Steakhouse &

Saloon v. Alpha of Va., 43 F.3d 922, 930 (4th Cir. 1995).[8]

Michilin has not alleged that it possesses a protectable mark for its shredders, let alone

_____

[7]The Court presumes that Michilin intended to cite to § 1125(a)(1)(A), considering that
the section of the statute to which it cites in its Response, § 125(a)(1)(A), does not exist.

[8]See also Lone Star Steakhouse & Saloon, 43 F.3d at 930 n.10 ("The test for trademark
infringement and unfair competition under the Lanham Act is essentially the same as that for
common law unfair competition under Virginia law because both address the likelihood of
confusion as to the source of the goods or services involved.").

set forth facts showing infringement.  Nothing in its counterclaim shows that Fellowes made a

"false designation of origin, false or misleading description of fact, or false or misleading

representation of fact."  Michilin offers no reason why Fellowes' alleged act, "bringing . . .

attention" to this lawsuit, is either false or misleading.  <u>See</u> Def.'s Proposed Countercl. 1 ¶ 61.

Moreover, Michilin has made no showing that Fellowes' actions, even if they occurred, were or

are "likely to cause confusion . . . as to the origin, sponsorship or approval. . . of [Michilin's]

goods." § 1125(a)(1)(A).  Michilin "has failed utterly to establish the requisite element of

consumer confusion."  <u>Girl Scouts of the United States of America v. Personality Posters Mfg.</u>

<u>Co.</u>, 304 F. Supp. 1228, 1230-31 (S.D.N.Y. 1969).  To merely say a statute has been violated has

never been sufficient for purposes of Rule 8(a)'s "short and plain statement" requirement.  <u>See</u>

<u>Chao</u>, 415 F.3d at 349.  In the light most favorable to Michilin, the Court finds absolutely no

basis for a claim under § 43(a)(1)(A).[9]  The Court admonishes counsel to stay on target.  This is

a patent infringement suit, not an exercise in generating billable hours.  Accordingly, to the

extent that Michilin is asserting a counterclaim under 15 U.S.C. § 1125(a)(1)(A) or (B),

Fellowes' motion to dismiss for failure to state a claim is **GRANTED**.

---

[9]Although Michilin does not expressly invoke the false advertising prong of the Lanham Act, § 1125(a)(1)(B), the Court will give this provision brief consideration because the parties addressed it.  Section 1125(a)(1)(B) prohibits the "false or misleading description of fact, or false or misleading representation of fact, which . . . in <u>commercial advertising or promotion</u>, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities" (emphasis added).  "For liability to arise under the false advertising provisions of the Lanham Act, 'the contested statement or representation must be either false on its face or, although literally true, likely to mislead and to confuse consumers given the merchandising context.'" <u>Scotts</u> Co. v. United Inds. Corp., 315 F.3d 264, 272-73 (4th Cir. 2002) (citations omitted); <u>Pediamed Pharmaceuticals, Inc. v. Breckenridge</u>, 419 F. Supp.2d 715, 728 (D. Md. 2006).  Because Michilin does not assert that Fellowes' alleged statements were false or likely to confuse consumers, or that they arose out of commercial advertising or promotion, the false advertising prong is plainly inapplicable.

The Clerk of the Court is **DIRECTED** to transmit a copy of this Order to all counsel of record by fax and by mail.

**IT IS SO ORDERED.**

_____/s/_____
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

September 18, 2006

17